STATE *ex rel.* DECKER, *County Atty.,* v. STANFIELD, *Dist. Judge.*

No. 3770.    Opinion Filed August 20, 1912.

(126 Pac. 239.)

1. **COURTS—Holding Court—Terms—Expenses.** When the court expense fund has been exhausted, the district judge should hold court for the purpose of hearing matters which may be disposed of without a jury, as such a term of court may be held without incurring any charge against the court expense fund.

2. **MANDAMUS—Holding Court—Court Expense Fund.** When the court expense fund has been exhausted, mandamus will not issue to compel the district judge to impanel a jury or incur expenses payable out of that fund, as chapter 80, Sess. Laws 1910-11, prohibits any officer from incurring, authorizing, or approving a charge against an exhausted fund.

3. **COURTS—District Court—Terms—Expenses.** Chapter 102, Sess. Laws 1910, fixing the terms of the district courts of the state, does not require a jury term to be held and expenses to be incurred, chargeable to the court expense fund, when this fund has been exhausted.

4. **COUNTIES — Holding Court — Expenditure—Statutes.** The provisions of chapter 80, Sess. Laws 1910-11, limiting the expenditure of public funds to the income provided for the year, apply to the courts, as well as to the county officers.

5. **CONSTITUTIONAL LAW—Courts Open for Business—Expense Fund—Constitutional Provisions.** Section 6 of article 2 of the Constitution, providing that the courts shall be open to every person, and speedy and certain remedy afforded for every wrong, does not mean that the court shall remain open after the funds provided for their expenses have been exhausted, but is to be construed in connection with section 26 of article 10 of the Con-

stitution, providing that no municipal corporation shall be allowed to become indebted for any purpose to an amount exceeding the income and revenue provided for the year.

6.   JUDGES — Powers — Jury—Attendance of Witnesses—Compensation. Whether a district judge, in order to meet an emergency, would be justified in impaneling a jury and compelling the attendance of witnesses, without compensation for their services, is a question not involved in this case.

(Syllabus by Ames, C.)

Original action for writ of mandamus by the State of Oklahoma, on the relation of V. S. Decker, County Attorney, against Wade S. Stanfield, District Judge. Petition granted in part and denied in part.

*E. B. Hughes, R. B. Thompson, W. Morris Harrison, George L. Burke, F. P. Smith,* and *C. W. Lively,* for relator.

*Charles West,* Atty. Gen., and *W. C. Reeves,* Asst. Atty. Gen., *amici curiae.*

Opinion by AMES, C. This is an original action by the state, on the relation of V. S. Decker, county attorney of Creek county, seeking to compel Wade S. Stanfield, as district judge, to hold a term of court in that county. The petition alleges that upon the day fixed by law for convening the term the district judge opened court and announced that he would not tranasct any business of any kind, for the reason that the funds available for court expenses, under the estimate made and approved by the excise board of Creek county, had been exhausted, and that therefore he could not lawfully contract, incur, acknowledge, authorize, allow, or approve any indebtedness against the fund known as "Court Expenses" for the current year, on account of the claim made by him that this would be in violation of chapter 80, Sess. Laws 1910-11.

The petition further shows that there were pending at that time sundry actions against the county treasurer of Creek county to enjoin him from collecting taxes aggregating $75,000, in which temporary injunctions had been granted by the court; that such actions were court cases, and could be tried without a jury; that the witness fees would be taxable to the parties; that

State ex rel. Decker, County Atty., v. Stanfield, Dist. Judge.

the salaries of the court officers were payable out of the salary fund of the county and the salaries of the judge and court stenographer were payable out of the state treasury; that the rent for the courthouse was payable out of the supply fund.

The petition further discloses that there were then pending in said court numerous motions and demurrers in civil actions, and also about 200 cases triable by the court without a jury, all of which the court might hear without incurring any indebtedness against the court expense fund.

The petition further discloses that there were pending numerous other civil cases triable before juries, and likewise many criminal cases which, of course, would be triable before juries; and it is alleged that chapter 80, Sess. Laws 1910-11, is unconstitutional, in that it deprives the defendants in these criminal cases of a speedy trial, and prevents the trial of the civil cases in which juries may be had.

The defendant has filed an answer, admitting his refusal to hold a term of court, and pleading as a defense that the act of the Legislature referred to prohibits the incurring, acknowledging, authorizing, allowing, or approving any indebtedness against the county expense fund, because it has been exhausted, and averring "that it is impossible to convene the district court without transacting, incurring, acknowledging, authorizing, allowing, or approving any indebtedness, and that it would be necessary, in order to try the equity cases, to hold what is termed in plaintiff's petition an 'equity term' of said district court and incur the indebtedness, to wit, transacting, incurring, acknowledging, authorizing, allowing, and approving the bailiff's fee, district clerk's fee, sheriff's fee, and rent of the courtroom, and fuel," etc.

Two questions are presented: First, whether the writ should issue for the purpose of hearing cases in which a jury is not necessary; and, second, whether the writ should issue for the purpose of hearing cases in which a jury is necessary.

We think the writ should issue as to the first class of cases, and should be denied as to the second.

For the purpose of hearing motions and demurrers and cases triable before the court, the district judge, the clerk of the

district court, and the sheriff, or one of his deputies, are the only officers whom it is necessary to have present. These officers are all paid a salary (chapter 69, Sess. Laws 1910), the salaries of the district judge and the stenographer being paid by the state, and those of the district clerk and the sheriff by the county; and none of these salaries are payable out of the court expense fund. If the employment of a bailiff would violate the law, it seems to us that the district judge can very easily hold a term of court without a bailiff, where there is no jury; and that therefore all matters pending in this county, in which a jury is not necessary, may be disposed of without incurring any expense to be paid out of the court expense fund.

Whether or not a jury should be impaneled and the expense of holding a jury term incurred when the court ·expense fund has been exhausted is a more difficult question; but we have reached the conclusion that the judge should not be compelled by writ of mandamus to hold such a term after the fund has been exhausted. Section 2, chapter 64, Sess. Laws 1910, requires the board of county commissioners of each county to meet on the first Monday in July of each year and make out an itemized statement of the fiscal condition of the county and the estimate of the needs thereof for the current expenses of the ensuing year, so itemized as to show the amount necessary for, first, salaries; second, court expenses; third, county supplies; seventh, contingent fund, and other items specified. Section 3 creates a county excise board, consisting of the county clerk, county treasurer, county judge, county superintendent, and county attorney. Section 4 requires this excise board to meet on the last Saturday of July, for the purpose of examining the estimate of expenses made by the county commissioners. When they have corrected or approved this estimate, they are required to make the proper levy, in order to raise the necessary income for the county. Under section 6, chapter 80, Sess. Laws 1910-11, warrants may be issued to the amount of this estimate for the current fiscal year. By section 7 it is made unlawful for any officer to participate in the issuance of ·a warrant in excess of the estimate; and such excess warrants are declared not to be a charge against the

municipality. Section 8 makes it a misdemeanor for any treas-
urer to register or pay such a warrant. Section 9 makes it un-
lawful for the board of county commissioners, or any other
municipal board, to make any contract for incurring, acknowledg·
ing, approving, allowing, or authorizing any indebtedness against
their respective municipalities in excess of the estimate; and
section 10 makes it a misdemeanor for any officer to violate the
law in this respect. Section 26 of article 10 of the Constitution
provides, among other things, that "no county, city, town, town-
ship, school district, or other political corporation, or subdivision
of the state, shall be allowed to become indebted, in any man-
ner, or for any purpose, to an amount exceeding, in any year,
the income and revenue provided for such year. * * *" We
think these provisions of the Constitution and of the statutes
are intended to prevent any charge being made against the coun-
ty on account of court expenses in excess of the estimate of the
excise board.

It is argued, however, that section 6 of article 2 of the Con-
stitution, which provides that "the courts of justice of the state
shall be open to every person, and speedy and certain remedy
afforded for every wrong and for every injury to person, prop-
erty, or reputation, and right and justice shall be administered
without sale, denial, delay, or prejudice," requires that this pro-
vision of the statute be submerged in the necessity of granting
to persons accused of crime the right to a speedy trial. We do
not think so. We think this section of the Constitution must be
enforced, but that it must be enforced in accordance with the
law. We do not think it means that, regardless of the statute,
regardless of the fiscal arrangements of the state, and regardless
of the interests of the taxpayers, courts shall proceed in violation
of the law. The courts, being charged with the duty of admin-
istering the law, should be most astute not to violate it. When the
county excise board, in good faith, has made an estimate for the
court expense fund for the current year, the courts must observe
that estimate; and if there be occasional instances of hardship
the appeal is to the Legislature, and it does not justify the courts
in themselves violating the law.

It is also argued that chapter 102, Sess. Laws 1910, fixes the time of convening the regular terms of the district court in each county of the state, and that in Creek county three terms are fixed for every year, and that therefore it is the duty of the judge to hold this term, even though in doing so he violates the revenue statutes of the state.   We have already held that a large class of business before the district courts may be transacted without incurring any expense chargeable against the court expense fund, and therefore it follows that the terms may be held as specified; but it does not follow that juries may be impaneled and expenses incurred in violation of the law.   This provision of the statutes must be construed in harmony with all the others relating to the same subject; and, where the Legislature has so carefully placed limitations upon the expenditure of public funds, a general provision, directing a term of court to be held, will not be construed as nullifying this limitation, particularly where the Constitution itself prohibits the incurring of any indebtedness in excess of the income provided for the year.

It is also argued that chapter 80, Sess. Laws 1910-11, has no application to those expenses which are imposed by law, and only relates to those which are voluntarily contracted by the municipalities therein described; and that, as the Legislature provides that terms of court shall be held, and the jurors shall be paid, and that other expenses incident to holding the terms shall be paid, those provisions limiting payment to the estimate made by the excise board do not apply to these charges imposed by the Legislature.   Section 26, art. 10, of the Constitution, provides, however, that no county, etc., "shall be allowed to become indebted, in any manner, or for any purpose," in an amount in excess of the revenue provided.   To hold that, notwithstanding this provision, the county can become indebted in excess of the revenue provided, for any obligation imposed upon it by the Legislature, is to hold that this provision is not binding upon the Legislature.   It seems to us that this provision means just what it says; that no county shall be allowed to become indebted, either by the act of its own officers, or the act of the state Legislature. The provision is against the county being allowed to become in-

debted, and, the provision being in the Constitution, it seems to us, is binding upon all inferior agencies, and therefore prevents the Legislature from allowing the county to become indebted, as well as the county's own officers. This conclusion is supported by *Board of County Com'rs of D. County v. Gillett,* 9 Okla. 593, 60 Pac. 277; *Buchanan v. City of Litchfield,* 102 U. S. 278, 26 L. Ed. 138; *Litchfield v. Ballou,* 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; *Lake County v. Rollins,* 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060; *Doon Twp. v. Cummins,* 142 U. S. 366, 12 Sup. Ct. 222, 35 L. Ed. 1044; *City of Guthrie v. New Vienna Bank,* 4 Okla. 194, 38 Pac. 4; *Martin v. Ter. of Oklahoma,* 5 Okla. 188, 48 Pac. 106; *Kerr v. State,* 33 Okla. 110, 124 Pac. 284.

In *Lake County v. Rollins,* 130 U. S. 662, 671, 9 Sup. Ct. 651, 32 L. Ed. 1060, 1064, a case holding that the county was not liable on warrants issued for witnesses' and jurors' fees, election costs, charges for board of prisoners, county treasurer's commissions, etc., Mr. Justice Lamar says:

"Defendant in error insists that the interpretation contended for by the county leads to certain absurd consequences, viz., that it is senseless to limit the power of a county to incur debt generally, since its exercise of such a power may, by sudden exigencies, become imperatively necessary to the discharge of its functions; that it would be to require the county to provide in advance, by taxation or otherwise, for the payment of expenses which, from their nature, can only be guessed at; that it would be to enable any county in two years, by a vote and a loan, to exhaust the whole possible indebtedness in the way of buildings, roads, and bridges, leaving no margin for other necessities; that it would be to destroy the county governments, since the county officials and others will not work for nothing, and the margin of possible debt is, in nearly all the counties, already reached; and that it would be to avoid nearly all the tax payments heretofore made in warrants. All of these objections could well be answered from the facts as disclosed by the bill of exceptions; but it is not necessary. We cannot say, as a matter of law, that it was absurd for the framers of the Constitution for this new state to plan for the establishment of its financial system on a basis that should closely approximate the basis of cash. It was a scheme favored by some of the ablest of the earlier American statesmen. Nor can the fact disclosed in the bill of exceptions, that, after

the adoption of the state Constitution the county officials, and many of the people, designedly or undesignedly disregarded the constitutional rule, render the plan absurd. If it was a mistaken scheme, if its operation has proved or shall prove to be more inconvenient than beneficial, the remedy is with the people, not with the courts."

Again, in the same opinion, 130 U. S. 673, 9 Sup. Ct. 653, 32 L. Ed. 1064, he quotes with approval the following from the Supreme Court of Illinois, in *Law v. People,* 87 Ill. 385, 395:

"But should it work hardship to individuals, that by no means warrants the violation of a plain and emphatic provision of the Constitution. The liberty of the citizen, and his security in all his rights, in a large degree depend upon the rigid adherence to the provisions of the Constitution and the laws and their faithful performance. If courts, to avoid hardships, may disregard and refuse to enforce their provisions, then the security of the citizen is imperiled. Then the will—it may be the unbridled will —of the judge, would usurp the place of the Constitution and the laws; and the violation of one provision is liable to speedily become a precedent for another, perhaps more flagrant, until all constitutional and legal barriers are destroyed, and none are secure in their rights. Nor are we justified in resorting to strained construction or astute interpretation to avoid the intention of the framers of the Constitution, or the statutes adopted under it, even to relieve against individual or local hardships. If unwise or hard in their operation, the power that adopted can repeal or amend, and remove the inconvenience. The power to do so has been wisely withheld from the courts; their functions only being to enforce the laws as they find them enacted."

In *Shannon v. State ex rel. Davidson,* 33 Okla. 293, 125 Pac. 1106, Mr. Justice Hayes, in delivering the opinion of the court, held that warrants should not be issued against an exhausted fund to cover the board of county prisoners and the rent of a building occupied by the county, saying:

"We are not unaware that this rule may operate to embarrass the administration of affairs in some counties, where the estimates made and approved by the excise board have proven insufficient to meet the expenses of the county; but it is an embarrassment that flows from the operation of the plain letter of the statute, and the courts are not justified in going beyond the law expressed in a plain statute, although to do so might relieve a difficult situation."

State ex rel. Decker, County Atty., v. Stanfield, Dist. Judge.

See, also *O'Neil Engineering Co. v. Inc. Town of Ryan*, 32 Okla. 738, 124 Pac. 19, and the cases therein cited.

This is an action of mandamus to compel the district judge to hold a term of court, and therefore does not involve actions which rest within the discretion of the judge, but only applies to those duties imposed by law. There may be cases when, by reason of some great emergency, a district judge might be justified in compelling the attendance of jurors and witnesses without compensation, in order that the public peace might be preserved, and we do not mean by this decision to hold that there may not arise such an emergency which might appeal to the discretion of the judge. We confine our decision to the case before us; and are of the opinion that the district judge should hold a term of court whenever prescribed by law, even though the court expense fund is exhausted, but that, under ordinary circumstances, he should not be required to impanel a jury and incur expenses which the law prescribes shall be paid out of the court expense fund, unless there is revenue in that fund properly available.

We think the writ of mandamus should be granted, requiring the respondent to hold a term of court for the purpose of transacting all business which may be carried on without imposing a charge upon the court expense fund, but not to impanel a jury or incur any expense which would be a charge against that fund.

By the Court: It is so ordered.