## BUXTON & SKINNER STATIONERY CO. v. BOARD OF COM'RS OF CRAIG COUNTY.

No. 6235. Opinion Filed February 1, 1916.

(155 Pac. 215.)

1. **LIMITATION ON INDEBTEDNESS.** Section 26, art. 10, Williams' Constitution, provides: "No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose. * * * "

2. **COUNTIES—Creation of Debt—Time—Liability of County.** The board of county commissioners of the county of C. entered into a contract with B., pursuant to the terms of which the latter furnished the officers of said county certain supplies covering the period beginning on the 1st day of October, 1912, and ending on the 19th day of January, 1913. On the first date there was unexpended of the approved estimate of the supply fund for the fiscal year 1912-13 the sum of $6,000; and on the latter date the sum of $1,500. On the 30th day of April, 1913, B. presented his claim for payment, and the same was disallowed for the want

of funds; the supply fund in the meantime having become exhausted. **Held,** that the indebtedness was created at the time the contract was made and supplies furnished, and not when the claim was presented for payment. **Held,** further, that the claimant is entitled to judgment against the county for the amount of his claim.

(Syllabus by the Court.)

*Error from District Court, Craig County;*
*Preston S. Davis, Judge.*

Action by the Buxton & Skinner Stationery Company, a corporation, against the Board of County Commissioners of Craig County, Okla. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

*C. Caldwell,* for plaintiff in error.

*Willard H. Voyles,* County Attorney, for defendant in error.

*Riddle, Bennett & Mitchell, amici curiae.*

KANE, C. J. This was an action commenced by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, for the purpose of recovering the purchase price of certain supplies sold and delivered to certain county officers of the county of Craig pursuant to contract. The cause was tried upon an agreed statement of facts, from the consideration of which the trial court arrived at the conclusion that the claim of the plaintiff was in contravention of section 26, art. 10, of Williams' Constitution, and entered judgment in favor of the defendant for costs, to reverse which this proceeding in error was commenced.

In our judgment the conclusion reached by the trial court is erroneous. The applicable part of section 26, art. 10, *supra,* reads as follows:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose.  *   *   *"

Other similar limitations on the power of county commissioners to bind the county may be found in sections 6, 7, 8, 9 and 10 of chapter 80, Session Laws 1910-11, which in substance provide that the county may be bound only for the amount approved by the excise board, and, if the county officials incur indebtedness over such amount, they and their bondsmen, and not the county, shall be liable for such indebtedness.

There is no question raised as to the power and duty of the board of county commissioners to furnish the county officers necessary blank books, stationery, supplies, etc., at the expense of the county, and provide for their payment; nor that the supplies herein were furnished in pursuance of this power. It is stipulated in the agreed statement of facts that the goods, wares, merchandise, and supplies mentioned in the petition of the plaintiff were purchased for the county of Craig during the period from October 1, 1912, to January 11, 1913, inclusive, at the prices mentioned in the petition, and that said goods, wares, merchandise, and supplies were delivered to the various county officers for use in said offices, and were used by the said various county officials in said county in the transaction of the public business of such county. It is further agreed that on October 1, 1912, there was unexpended of the approved estimate of the supply fund of said county for the fiscal year 1912-13 the sum of $6,000, for which no warrants had been

issued, and on January 11, 1913, there was unexpended of said estimate the sum of $1,500, for which no warrants had been issued.

Up to this point, it seems to be conceded that the transaction between the plaintiff and defendant was in all things legal. What subsequently transpired, however, is what caused the difficulty. It seems that the plaintiff did not file its claim for the goods, wares, merchandise, and supplies furnished by it until the 30th day of April, 1913, at which time the income and revenue provided for the payment for supplies during the fiscal year for which they had been furnished became exhausted, and the claim was disallowed by the board of county commissioners for want of funds.

It is quite clear to us that the foregoing transactions do not constitute a violation of section 26, art. 10, of the Constitution. The county did not become indebted in any manner for any purpose for any amount exceeding the income and revenue provided for the fiscal year during which the supplies were furnished. The debt was created at the time the contract for the supplies was made, and not when the claim therefor was presented for payment. *Thompson Houston Co. v. Newton* (C. C.) 42 Fed. 723; *Rollins v. Rio Grande Co.,* 33 C. C. A. 181, 90 Fed. 575; *Lake County v. Standley,* 24 Colo. 1, 49 Pac. 23; *Town Lot Co. v. Lane,* 7 S. D. 599, 65 N. W. 17; *Huddleston v. Board of Co. Com'rs of Noble County,* 8 Okla. 614, 58 Pac. 749; *Johnson v. Pawnee County,* 7 Okla. 686, 56 Pac. 701; *In re Application of the State to Issue Bonds,* 33 Okla. 797, 127 Pac. 1065.

In support of the action of the trial court, counsel for defendant in his brief says:

"The people of this state, in erecting the state, wrote into the Constitution section 26 of art. 10. They did so

with a purpose; with the design to place upon the officials of the county a brake upon extravagance. By this provision they limited the power of the county officers to create indebtedness for the taxpayers to pay. By it they declared to the world that the power of those officers over the people's purse-strings is limited; so far may the officers go with county indebtedness, and no further. As said by the court in *Brodford v. City, etc.* [Calif.] 44 Pac. 912: 'For cause which seemed good to the framers of our fundamental law, a barrier against indebtedness by municipal officers and local bodies has been created by the Constitution. The door has been locked against all indebtedness of the local bodies and the key placed in the hands of the electors, who alone can use it, and the judiciary may not arrogate to itself the power to undo what has been solemnly done.' "

This is all very well, but as the parties have agreed that, at the time the county was allowed to become indebted for the supplies furnished herein, the income and revenue provided for that year had not been exhausted, either by expenditure of the supply fund or the creation of prior valid indebtedness, the subsequent exhaustion of the funds of the county by the payment of invalid claims could not possibly have the effect of invalidating an indebtedness which was perfectly legal at the time the obligation was created.

Clearly it was the intention of the people that the constitutional "brake upon extravagance" should be applied before the county is allowed to become indebted, not afterwards. The plaintiff herein was under no necessity to present its claim immediately for payment. By section 1570, Rev. Laws 1910, it could have presented it at any time within two years after the same accrued. The county commissioners knew a valid indebtedness had been incurred, and they should have made provision for its payment. According to the agreed statement of facts, there was

ample money in the supply fund for that purpose at the time the county became indebted for the supplies furnished, and the amount of this claim should have been laid aside for its payment. In other words, the "brake" should have been applied by the board of county commissioners before the county was allowed to become indebted in excess of its income and revenue for that year. But if, as in this case, the county commissioners do allow the county to become indebted in excess of its income and revenue, contrary to the constitutional limitation, the money in the treasury of the county available for the payment of the valid indebtedness of the county should not be applied in payment of the invalid claims. An ordinary debtor may incur indebtedness in excess of his ability to pay, and he may pay debts in such order as he chooses; but a county cannot incur valid obligations exceeding in any one year the income and revenue provided for such year, without the assent of three-fifths of the voters thereof. The moment it oversteps that mark, its contracts cease to be valid, and it cannot pay the claims based upon them. Indeed, it is under the same legal obligation not to pay them as it is to pay its legal and valid obligations. Of course, it is a matter of indifference in what order the legal claims are paid, if they are paid in full, as they necessarily must be if no part of the revenues is misapplied, embezzled, or lost. But it is far from being a matter of indifference if invalid claims, founded upon void contracts, are paid before valid claims, founded upon valid contracts, are presented for payment.

Parties entering into contracts with a county are bound to take notice of these constitutional limitations and to ascertain as to what extent the revenues have been appropriated to existing liability; but they are not bound to anticipate, and no amount of prudence or foresight could

enable them to forsee, that illegal claims would be incurred
by officers willing to violate the Constitution.    In our judg-
ment, the sole question herein is whether the indebtedness
was valid at the time it was incurred.    In determining the
validity of such indebtedness, it will, of course, always be
necessary to inquire whether, at the date of its creation,
there were unappropriated revenues to meet it, because, if
there were not, there would be no liability resting upon the
county, and the claimant would not be entitled to judgment.
But if, at the time the contract was made, the indebtedness
created thereby, together with all previous valid indebted-
ness, did not exceed the income and revenue of the county
provided for such year, the claimant will be entitled to judg-
ment for the amount of his claim.    *Johnson v. Bd. Co.
Com'rs,* 7 Okla. 686, 56 Pac. 701; *Huddleston v. Bd. Co.
Com'rs,* 8 Okla. 614, 58 Pac. 749; *Bd. of Eduction v. Bol-
ton,* 104 Ill. 220; *New Orleans v. U. S.,* 49 Fed. 40, 1. C. C.
A. 148; *Holtzhauer v. City,* 94 Ky. 396, 22 S. W. 752; *Moun-
tain Grove Bank v. Douglas,* 146 Mo. 42, 47 S. W. 944;
*Higgins et al. v. San Diego Water Co.*. 118 Cal. 524, 45 Pac.
824, 50 Pac. 670.

For the reasons stated, the judgment of the court below
is reversed, and the cause remanded, with directions to pro-
ceed in accordance with the views herein expressed.

All the Justices concur.